**In re Benn L. RICHELS, Debtor.**

**Alexander P. SMITH, Trustee, Plaintiff,**

**v.**

**Benn L. RICHELS, Berlin–Miles–Richels, Inc. and Berlin–Miles–Richels Investments, Inc., Defendants.**

**Bankruptcy No. 93–26271–T.
Adv. No. 93–2086–T.**

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

Feb. 3, 1994.

Alexander P. Smith, Norfolk, VA, Chapter 7 Trustee, pro se.

Jonathan L. Hauser, Croshaw, Beale, Hauser & Lewis, P.C., Virginia Beach, VA, for debtor.

Paul K. Campsen and Ellen C. Carlson, Kaufman & Canoles, P.C., Norfolk, VA, for Berlin–Miles–Richels, Inc. and Berlin–Miles–Richels Investments, Inc.

### *MEMORANDUM OPINION*

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

Hearing was held on November 23, 1993, on the motion of Berlin–Miles–Richels, Inc., (BMR) and Berlin–Miles–Richels Investments, Inc., (BMRI) to dismiss plaintiff chapter 7 trustee's complaint to avoid a fraudulent transfer of property pursuant to 11 U.S.C. §§ 544(b), 548(a) and 550(b). The motion to dismiss alleges lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. *See* Fed. R.Bankr.P. 7012(b) and Fed.R.Civ.P. 12(b)(1) and (6). For reasons stated in this opinion the motion to dismiss will be denied.

### Findings of Fact

The principal facts alleged by the complaint, and which must be accepted as true under the motion to dismiss, are as follows. Debtor filed a chapter 7 petition on November 6, 1992. Plaintiff subsequently qualified as trustee of debtor's estate.

At the time of filing, debtor owned 50 percent of the outstanding common stock of defendant BMR and is president and a director of the company. BMR is therefore an affiliate and an insider of debtor as defined in the Bankruptcy Code. Debtor is also the dominant and controlling shareholder of BMR, which has operated in the field of real estate development and management since 1962.

On June 18, 1992, BMRI was incorporated. At its organizational meeting held on June 22, 1992, BMRI's board of directors elected debtor as president. BMRI's initial stock subscription of 100 shares did not include debtor. However, 25 shares were issued to debtor as trustee for the benefit of debtor's children for consideration of $25.00. BMRI is an affiliate and an insider of debtor as defined in the Bankruptcy Code. Four individuals including debtor are the directors of each corporation.

On November 1, 1992, five days prior to filing his chapter 7 petition, debtor executed an employment agreement with BMRI providing for an annual salary of $90,402.00. Other provisions in the agreement essentially mirrored debtor's previously executed employment agreement with BMR.

Also on November 1, 1992, BMR and BMRI executed an agreement which transferred substantial interests in various partnerships and land trusts from BMR to BMRI. The gross monthly rentals on the partnerships and land trusts exceeded $1,000,000.00 in the fourth quarter of 1992. In exchange for this transfer, BMRI assumed the liabilities related to the partnership and land trust interests and executed a promissory note for $45,362.50 in favor of BMR. The transfer was made for inadequate consideration and with actual intent to hinder, delay or defraud debtor's creditors. Debtor signed the agreement twice, once in his capacity as president of BMR and again as president of BMRI.

BMR also executed other agreements on or about November 1, 1992, appointing BMRI as manager and leasing agent of the various properties whose interests BMR owned and transferred to BMRI. These agreements specify that BMRI receive 5 percent of the properties' gross rentals as its fee. The transfer was made for inadequate consideration and with actual intent to hinder, delay or defraud debtor's creditors. Debtor executed these agreements in his capacity as president of BMR.

The result of these transactions has been to substantially reduce the value of debtor's primary asset which is the 50 percent stock ownership in BMR. Debtor listed this stock in his bankruptcy schedules with an assigned value of $1.00.

Plaintiff filed this adversary proceeding seeking to avoid the transfer of assets from BMR to BMRI as fraudulent pursuant to 11 U.S.C. §§ 544(b), 548(a) and 550(b). It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H).

### Discussion and Conclusions of Law

█ In reviewing a Rule 12(b)(6) motion to dismiss, the court must accept all allegations of the complaint as true, construe the complaint in a light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff might be entitled to relief. *Performance Communications, Inc. v. First Nat'l Bank (In re Performance Communications, Inc.)*, 126 B.R. 473, 474 (Bankr.W.D.Pa.1991) (citing *Rogin v. Bensalem Township*, 616 F.2d 680, 685 (3d Cir.1980), *cert. denied*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981)). Moreover, a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

█ Thus this court must accept the allegations in the complaint as true for the purpose of ruling on the defendants' dismissal

motion; the findings of fact are construed in a light most favorable to plaintiff.

The essential basis of defendants' motion is that the assets of neither BMR nor BMRI constitute property of debtor's estate pursuant to 11 U.S.C. § 541. The assets of BMR constitute the subject matter of this adversary proceeding. If there is no legal theory by which the trustee can bring the assets of BMR or BMRI into debtor's estate, defendants must prevail because the court would lack subject matter jurisdiction.

Moreover, if the assets are not property of the estate, then the trustee has not stated a claim upon which relief can be granted. Defendants argue that plaintiff never asserted that BMR's assets were property of the estate, a fatal omission. However, paragraph 37 near the end of the complaint alleges that the debtor "concealed assets of his estate as described above" which stands to defeat that point of defendants' argument.

Thus, the court is left with determining whether any legal theory exists by which the trustee may assert jurisdiction over the assets of the defendant corporations. If one is found, the motion to dismiss is defeated, and the case may proceed on the merits.

Plaintiff trustee's complaint may be construed as alleging that debtor is the alter ego of BMR and that BMR was used to disguise fraudulent conduct by debtor. Thus, the court could choose to invoke the doctrine of piercing the corporate veil and disregard BMR's corporate status. Disregarding BMR's corporate status would equate BMR's assets with those of the debtor, giving the trustee access to BMR's assets (and the requisite standing) for the purpose of avoiding the fraudulent transfer.

■ Customarily, the doctrine of piercing the corporate veil is an equitable principle employed to hold a shareholder liable for corporate acts. *See Guinee v. Heydt (In re*

*Wilson),* 90 B.R. 208, 212 (Bankr.E.D.Va. 1988). A piercing of the corporate veil by a shareholder rather than a creditor of the corporation is known as a reverse piercing.[1] *In re Wilson,* 90 B.R. at 212.

■ Under Virginia law, piercing the corporate veil requires findings that (i) the corporate entity is the alter ego of the individual sought to be charged and (ii) the corporation was a device or sham used to disguise wrongs, obscure fraud or conceal crime. *Perpetual Real Estate Servs., Inc. v. Michaelson Properties, Inc.,* 974 F.2d 545, 548 (4th Cir.1992); *Cheatle v. Rudd's Swimming Pool Supply Co.,* 234 Va. 207, 360 S.E.2d 828, 831 (1987).

■ Plaintiff's complaint contains sufficient allegations to state a claim for relief under the corporate veil piercing doctrine. The trustee's allegations of debtor exerting domination and control over BMR coupled with the nature and timing of the transactions involved could satisfy the requisite findings under Virginia law. Moreover, a decision to pierce the corporate veil depends largely on resolving questions of fact. *Concrete Ready–Mix of Lynchburg, Inc. v. Lawyers Title Ins. Corp. (In re County Green Ltd. Partnership),* 604 F.2d 289, 292 (4th Cir.1979). This dependence precludes resolution of the issue on a motion to dismiss.

■ However, a reverse piercing is a unique twist and has been resolved on a motion to dismiss in the Eastern District of Virginia. *In re Wilson,* 90 B.R. at 212–13. In *Wilson,* Chief Judge Bostetter ruled that an individual, merely as the alter ego of a corporate entity, may not sue in his name for wrongs against the corporate entity. Defendants advance *Wilson* and its reasoning for the proposition that reverse piercing of the corporate veil is a principle which has been rejected outright in Virginia.

---

**1.** The doctrine of reverse piercing of the corporate veil has been employed in more than one context. *E.g., Cargill, Inc. v. Hedge,* 375 N.W.2d 477 (Minn.1985) (family farm corporation being an alter ego of its owner-occupants, the owners are entitled to use a reverse pierce of the corporate entity to assert a homestead exemption against a judgment creditor of one of the own-

ers); *Kingston Dev. Co. v. Kenerly,* 132 Ga.App. 346, 208 S.E.2d 118, 122 (1974) (allowing broker's commission on sale of land when the transaction was changed in form to a stock swap for tax purposes). However, as noted *infra,* this is the first case in the Eastern District of Virginia where the doctrine could conceivably be advanced in a trial on the merits.

However, in my view *Wilson* does not completely rule out consideration of a reverse piercing of the corporate veil. Chief Judge Bostetter further explained that piercing the corporate veil must somehow eliminate or minimize wrongdoing of the party against whom the doctrine is invoked.[2] *In re Wilson*, 90 B.R. at 213 (citation omitted).

 *Wilson* is thus distinguishable from this case. Debtor's alleged wrongdoing would be eliminated or minimized by the trustee piercing the veil on debtor's own behalf.[3] Moreover, piercing the veil and equating the assets of debtor with those of BMR would serve to give the chapter 7 trustee unquestionable authority to attack the corporate transfers.

One bankruptcy court has ruled that the chapter 7 trustee has standing to pursue a reverse piercing of the corporate veil by virtue of the estate's 50 percent ownership of the corporation's stock. *Halverson v. Schuster (In re Schuster)*, 132 B.R. 604, 609 (Bankr.D.Minn.1991). The court also discussed the seeming paradox of the chapter 7 trustee using this remedy as a successor to a shareholder and then allowing the trustee to use his predecessor's alleged wrongdoing in support of the remedy. The court concluded that the trustee, under a fiduciary duty to maximize the estate's recovery, must pursue this remedy as an active agent on behalf of all claimants against the estate. *In re Schuster*, 132 B.R. at 609 n. 6.

 Although *Schuster* was decided under Minnesota law, it supports my ruling here. The chapter 7 trustee has standing to bring the action by virtue of the estate's 50 percent ownership in BMR's common stock, and the trustee has asserted allegations sufficient to sustain an action for a reverse piercing of BMR's corporate veil.

2. This is the element which was missing in the *Wilson* case, resulting in the granting of a motion to dismiss. "Piercing the veil on Wilson's behalf in no way eliminates or minimizes any alleged wrongdoing of Wilson." *In re Wilson*, 90 B.R. at 213.

3. In fact, one court has gone so far as to enforce a reverse piercing of the corporate veil absent an allegation of fraud. *Kingston*, 208 S.E.2d at 122. Part of the court's reasoning is pertinent to this

In short, it does not appear beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. Thus, the action survives this dismissal motion and may proceed on the merits. Defendants' motion to dismiss will be denied.

A separate order will be entered.

case. "Jurisprudential pragmatism prevents the exaltation of legalities to a sacrosanct status in disregard of realities." *Kingston*, 208 S.E.2d at 122. If the trustee can prove the allegations contained in his complaint that the debtor did indeed effect the corporate transfers with the actual intent to hinder, delay and defraud debtor's creditors, the trier of fact may similarly decline to elevate form over substance.