**In re ELKAY INDUSTRIES, INC., Debtor.**

**W. Ryan HOVIS, Trustee for Elkay Industries, Inc., Plaintiff,**

**v.**

**UNITED SCREEN PRINTERS, INC., Defendant.**

**Civ. A. No. 3:93–1929–17.**

United States District Court,
D. South Carolina,
Columbia Division.

April 26, 1994.

ORDER

JOSEPH F. ANDERSON, Jr., District Judge.

This matter is currently before the court on the defendant's motion for summary judgment in this adversary proceeding by the trustee to avoid an allegedly preferential payment to the defendant. The court heard argument from counsel on February 25, 1994. For the reasons set forth below, the defendant's motion for summary judgment is denied.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). It is well-established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962). When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence. The nonmoving party, here the plaintiff, must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Jose Fernando Monge, Berry, Dunbar, Daniel, O'Connor, Jordan & Eslinger, Columbia, SC, for plaintiff.

Steve Barry Licata, Columbia, SC, William W. Pettit, Holcomb & Pettit, Charlotte, NC, for defendant.

## I. FACTS

On July 13, 1990, the debtor, Elkay Industries, Inc. ("Elkay"), voluntarily filed for protection under Chapter 11 of the United States Bankruptcy Code pursuant to 11

U.S.C. § 301. A Chapter 11 trustee was appointed on November 16, 1990. On April 10, 1991, this case was involuntarily converted to a Chapter 7 proceeding on motion of the Chapter 11 trustee, and W. Ryan Hovis was appointed as Chapter 7 trustee. The Chapter 7 · trustee commenced the instant adversary proceeding on April 7, 1993, pursuant to Bankruptcy Rule 7001 and 11 U.S.C. § 547, to recover an allegedly preferential payment from the debtor to the defendant made within ninety days of the filing of the bankruptcy petition.

The defendant has moved for summary judgment on the plaintiff trustee's avoidance action. The defendant claims that the action is barred by the applicable statute of limitations. Alternatively, the defendant asserts that the payment it received from the debtor was not a preference because the defendant argues that it is not a creditor of the debtor and that the payment was not on account of an antecedent debt. The court will address these issues seriatim.

## II. DISCUSSION

### A. Statute of Limitations

■ The defendant first contends that the trustee's action is barred by the two-year statute of limitations found in 11 U.S.C.

§ 546(a)(1). Section 546(a) provides: "An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—(1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202 of this title; or (2) the time the case is closed or dismissed." The defendant asserts that the two-year limitations period begins to run from the date of the commencement of the Chapter 11 proceeding,[1] or at least from the date of the Chapter 11 trustee's appointment. On the other hand, the trustee argues that when a case is converted from Chapter 11 to Chapter 7, the limitations period begins anew, and the Chapter 7 trustee has a fresh two-year period in which to commence an action to avoid a preference.

Although this appears to be a novel issue in the Fourth Circuit (other than the bankruptcy court's order denying defendant's motion to dismiss), there is a definite split of authority among the courts in other circuits that have addressed the issue. The majority of courts have followed Bankruptcy Judge Glen Clark's decision in *Stuart v. Pingree (In re Afco Dev. Corp.)*, 65 B.R. ·781 (Bankr. D.Utah 1986), holding that the statute of limitations period begins anew upon conversion of the case from Chapter 11 or 13 to Chapter 7.[2] However, a significant line of

1. Because this action was brought beyond two years from the date of the Chapter 11 trustee's appointment, the court need not address the issue of whether or not the limitations period of 11 U.S.C. § 546(a)(1) begins to run against the debtor-in-possession from the time the Chapter 11 petition is filed. Courts are split on this issue. *Compare Construction Mgmt. Servs., Inc. v. Manufacturers Hanover Trust Co. (In re Coastal Group Inc.)*, 13 F.3d 81 (3d Cir.1994) (holding that § 546(a)(1), read in light of § 1107(a), which gives a debtor-in-possession powers and duties of a trustee, affords a debtor-in-possession two years from the date of filing the case in which to bring avoidance actions); *Upgrade Corp. v. Government Technology Servs., Inc. (In re Software Centre Int'l, Inc.)*, 994 F.2d 682 (9th Cir.1993) (same); *Zilkha Energy Co. v. Leighton*, 920 F.2d 1520 (10th Cir.1990) (same) *with Korvettes, Inc. v. Sanyo Elec., Inc. (In re Korvettes, Inc.)*, 67 B.R. 730 (S.D.N.Y.1986) (holding that under the express statutory language of § 546(a)(1), the word "trustee" does not include debtors-in-possession); *Brin–Mont Chems., Inc. v. Worth Chem. Corp. (In re Brin–Mont Chems., Inc.)*, 154 B.R. 903 (M.D.N.C.1993) (same); *Pullman Constr. In-*

*dus., Inc. v. National Steel Serv. Ctr. (In re Pullman Constr. Indus., Inc.)*, 132 B.R. 359 (Bankr. N.D.Ill.1991) (same). *See generally* Gerald K. Smith & Frank R. Kennedy, *Fraudulent Transfers and Obligations: Issues of Current Interest*, 43 S.C.L.Rev. 709, 734–42 (1993) (rejecting analysis of *Zilkha* court and other courts that have held that the two-year limitations period in § 546(a)(1) applies to debtors in possession; and concluding that "[b]y its terms, section 546(a)(1) does not apply to debtors in possession").

2. *See, e.g., McCuskey v. FBS Leasing Corp. (In re Rose Way, Inc.)*, 160 B.R. 811, 812–13 (S.D.Iowa 1993); *Amazing Enters. v. Jobin (In re M & L Bus. Machs., Inc.)*, 153 B.R. 308, 310–11 (D.Colo.1993); *Strell v. Weston (In re Sandra Cotton, Inc.)*, No. CIV–88–1013E, 1989 WL 98851 (W.D.N.Y. Aug. 18, 1989), *rev'g* 92 B.R. 595 (Bankr.W.D.N.Y.1988); *Martino v. Assco Assocs., (In re SSS Enters.)*, 145 B.R. 915, 917–19 (Bankr.N.D.Ill.1992) ("Courts addressing the issue of whether the limitations period begins to run anew when a case is converted from one chapter to another have virtually uniformly held that upon conversion, the limitations period be-

cases has emerged following the recent Ninth Circuit decision of *Ford v. Union Bank (In re San Joaquin Roast Beef)*, 7 F.3d 1413 (9th Cir.1993), which holds that conversion of a case does not restart the limitations period.[3]

The defendant cites *In re San Joaquin Roast Beef* for the proposition that "[a] plain reading of section 546(a) is that the two-year statute of limitations begins running from the date the first trustee is appointed and that all subsequent trustees are subject to the same two-year statute of limitations." 7 F.3d at 1416. However, the text of the statute is ambiguous about which interpretation Congress intended.

Several courts have read section 546(a)(1) with reference to section 102(5) of the Code, which provides that "the word 'or' is not 'exclusive.'" *Zeisler v. Connecticut Bank & Trust Co. (In re Grambling)*, 85 B.R. 675, 676 (Bankr.D.Conn.1988); *see also Martino v. Assco Assocs. (In re SSS Enters.)*, 145 B.R. 915, 918 (Bankr.N.D.Ill.1992) (adopting interpretation of *Grambling* court). The court in *In re Grambling* quoted the portion of the House report explaining subsection 102(5), which provides: "'Paragraph (5) specifies that "or" is not exclusive. Thus, if a party "may do (a) or (b)," then the party may do either or both. The party is not limited to a mutually exclusive choice between the two alternatives.'" *In re Grambling*, 85 B.R. at 676 (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 315 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6272). The *Grambling* court concluded:

> Thus, the word "or" in § 546(a)(1) was not used to limit the commencement of actions or proceedings to two years after the appointment of a trustee, ... but rather to limit the commencement of actions or pro-

ceedings to two years after the appointment of any trustee. Had Congress intended the interpretation urged by the defendants, a more precise expression of that intent would have been utilized.

*Id.*

■ This court agrees that a plain reading of section 546(a)(1) is not dispositive of the issue at bar. That section may be read either to allow a two-year limitations period for *each* trustee appointed under one of the enumerated sections of the Code, or to limit the two-year period to run from the appointment of the *first* trustee in the case. Because of this ambiguity, the court will look beyond the plain text of the statute to the legislative history, pre-Code law, and policy considerations, as many courts that have addressed this issue have done.

Unfortunately, the legislative history of section 546(a)(1) is not very illuminating on this issue. The Senate report accompanying the reform bill merely provides the following about section 546: "'Subsection (c) [later renumbered as subsection (a) ] adds a statute of limitations to the use by the trustee of the avoiding powers. The limitation is two years after his appointment, or the time the case is closed or dismissed, whichever occurs later.'" *Stuart v. Pingree (In re Afco Dev. Corp.)*, 65 B.R. 781, 784–85 (Bankr.D.Utah 1986) (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 87 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5873). One may interpret the dearth of legislative history regarding section 546(a)(1) to suggest that Congress did not intend to change the existing law on this issue. *See id.*

In *In re Afco Dev. Corp.*, Bankruptcy Judge Clark recounted the pre-Code law regarding limitations on actions by bankruptcy

---

gins to run anew."); *Zeisler v. Connecticut Bank & Trust Co. (In re Grambling)*, 85 B.R. 675, 676–77 (Bankr.D.Conn.1988); *cf. Nichols v. Wood (In re Wood)*, 113 B.R. 253, 255 (S.D.Miss.1990) (holding that two-year statute of limitations for avoiding fraudulent transfers begins to run anew upon appointment of Chapter 7 trustee after conversion of case from Chapter 13); *Smith v. Moody (In re Moody)*, 77 B.R. 566, 574 (S.D.Tex. 1987) (holding that in a case converted from Chapter 13 to Chapter 11, Chapter 11 trustee had new two-year period in which to pursue

action to set aside fraudulent conveyance; following "scholarly and well reasoned opinion" of bankruptcy court in *In re Afco Dev. Corp.)*, judgment aff'd, 862 F.2d 1194 (5th Cir.1989), cert. denied, —— U.S. ——, 112 S.Ct. 1562, 118 L.Ed.2d 209 (1992).

**3.** *See, e.g., Grabscheid v. Denbo Iron & Metal, Inc. (In re Luria Steel & Trading Corp.)*, 164 B.R. 293 (Bankr.N.D.Ill.1994); *Dumas v. Research Testing Lab, Inc. (In re EPI Prods. USA, Inc.)*, 162 B.R. 1 (C.D.Cal.1993).

trustees. As he noted, "Prior to the enactment of Section 546(a), there was no separate statute of limitations for the trustee's avoiding powers. Section 11(e) of the Bankruptcy Act, former 11 U.S.C. § 29(e) (repealed) provided a general two-year statute of limitations for suits brought by the receiver or trustee." *Id.* at 783 (citing 4 Collier on Bankruptcy ¶ 546.02[1], at 546–4.1 (15th ed. 1985)). However, the statute of limitations in section 11(e) of the Act was tolled during the pendency of a Chapter X reorganization. Bankruptcy Act § 261, 11 U.S.C. § 661 (1976) (repealed 1978), *quoted in In re Afco Dev. Corp.*, 65 B.R. at 784 & n. 1; *see Davis v. Security Nat'l Bank*, 447 F.2d 1094 (1971) (holding that statute of limitations in section 11(e) of the Act was suspended during the pendency of the Chapter X case so that trustee could bring an action to avoid a preference after the Chapter X case was dismissed and the original bankruptcy case reinstated, even though original case had been pending for more than two years), *discussed in In re Afco Dev. Corp.*, 65 B.R. at 784.

This court adopts the reasoning in *Afco* and concludes that the legislative history of section 546(a)(1) does not indicate "that Congress intended to fundamentally change existing law with respect to limitations on avoidance power actions by trustees." 65 B.R. at 785.

Policy considerations support the interpretation of section 546(a)(1) that after conversion of the case, the trustee has a fresh two-year period within which to bring avoiding power actions. Most courts that have reached this conclusion have focused on the fundamental difference between the roles of trustees under Chapter 11 and Chapter 7. In *Martino v. Assco Assocs. (In re SSS Enters.)*, 145 B.R. 915 (Bankr.N.D.Ill.1992), the court stated:

Chapter 11 and Chapter 7 trustees may have very different views in deciding whether or not to pursue a potential avoiding power claim. For example, a Chapter 11 trustee may find it appropriate not to sue a potential preference or fraudulent conveyance defendant in order to induce that potential defendant to continue to fund a reorganization effort. That motiva-

tion disappears when the case is converted to one under Chapter 7.

*Id.* at 918–19 (citing *In re Afco Dev. Corp.*, 65 B.R. 781). In addition, the court in *In re Afco Dev. Corp.* recognized:

The essentially different objectives of Chapters 7, 11, and 13 support the view that a later trustee should not be barred from exercising avoiding powers due to inaction by an earlier trustee. The purpose of Chapter 11 is the salvage and rehabilitation of a financially distressed business, not necessarily to recover voidable transfers. A Chapter 11 trustee may not have to litigate preference actions in every case. They may be dealt with in a plan of reorganization, by offsetting the creditor's preference against the dividend paid under the plan, or may be compromised, settled, or abandoned....

"In reorganization cases, the trustee's duties and powers give him a presence and a role to play in shaping the entire reorganization process. It is this role which involves experience, discretion, judgment, diplomacy and creativity which makes the chapter 11 trustee's position substantially different from that of a chapter 7 trustee."

65 B.R. at 786 (quoting Irving Sulmeyer et al., *Collier Handbook for Trustees and Debtors in Possession* ¶ 16.01, at 16–1 (1982) (other citations and footnotes omitted); *accord McCuskey v. FBS Leasing Corp. (In re Rose Way, Inc)*, 160 B.R. 811, 812–13 (S.D.Iowa 1993); *Amazing Enters. v. Jobin (In re M & L Bus. Machs., Inc.)*, 153 B.R. 308, 311 (D.Colo.1993); *Zeisler v. Connecticut Bank & Trust Co. (In re Grambling)*, 85 B.R. 675, 676 (Bankr.D.Conn.1988) ("[C]hapters 7, 11, 12, and 13 are materially dissimilar, and a new trustee must have the right to exercise his or her authority under the converted case.").

■ Of course, the countervailing policy argument is that the limitations period in section 546(a) serves the same function as any other statute of limitations: barring stale claims. Statutes of limitations provide potential defendants with certainty that after a set period of time, they will not be hailed into court to defend time-barred claims. Moreover, limitations periods discourage plaintiffs

from sitting on their rights. *See, e.g., In re Afco Dev. Corp.,* 65 B.R. at 785 (citing *Anderson v. Yungkau,* 329 U.S. 482, 486, 67 S.Ct. 428, 430, 91 L.Ed. 436 (1947); *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 352, 103 S.Ct. 2392, 2392–97, 76 L.Ed.2d 628 (1983)).

Although the basic reason for statutes of limitations is certainly valid, this court determines that in the bankruptcy setting, the more important policy consideration is allowing post-conversion trustees a full two-year period in which to pursue avoidance actions. *See In re SSS Enters.,* 145 B.R. at 919. As the court in *SSS Enterprises* noted,

> If the court accepted the defendant's analysis, and a trustee was appointed in a Chapter 11 case and that case was converted to one under Chapter 7 more than two years after the initial Chapter 11 trustee was appointed, then the Chapter 7 trustee would, in part, be prevented from carrying out the trustee's duties delineated in § 704 of the Code.

*Id.* (citing *In re Grambling,* 85 B.R. 675). *Contra Grabscheid v. Denbo Iron & Metal, Inc. (In re Luria Steel & Trading Corp.),* 164 B.R. 293, 296 (Bankr.N.D.Ill.1994) (rejecting "new trustee, new two years" interpretation because "the purpose of the limitations period for recovery of preferential transfers is to provide finality for creditors who have received payments from the debtor").

For the forgoing reasons, the court hereby adopts the majority interpretation of Bankruptcy Code section 546(a)(1). Accordingly, in a case where a Chapter 11 trustee has been appointed, but where the case is later converted to Chapter 7, the Chapter 7 trustee has two years from the date of his appointment in which to bring actions under his avoiding powers.[4]

**4.** This opinion does not address the question of whether a successor trustee under the same chapter of the Code is entitled to a new two-year limitations period. *See In re Lyons,* 130 B.R. 272 (Bankr.N.D.Ill.1991) (holding that two-year statute of limitations within which Chapter 7 trustee is required to bring adversarial proceeding to avoid fraudulent conveyances begins to run on date of initial appointment of interim trustee and not on date of appointment of successor trustee).

## B. Requirements for a Preference

In support of its motion for summary judgment on the trustee's avoidance action, the defendant also argues that the payment it received from the debtor was not a preference. Under Bankruptcy Code section 547(b), a trustee may avoid as a preference a transfer of an interest in the debtor's property if the transfer was:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

  (A) on or within 90 days before the date of the filing of the petition; or

  (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

  (A) the case were a case under chapter 7 of this title;

  (B) the transfer had not been made; and

  (C) such creditor received payments of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

Only the first two requirements of section 547(b) are at issue in the present case. The defendant contends that it was not a creditor of the debtor and that the payment was not on account of an antecedent debt. The defendant argues that it did business only with Skyline Manufacturing Company, Inc. ("Skyline"), an incorporated subsidiary of the debtor, and did not deal with the debtor directly.[5]

**5.** At oral argument, the defendant conceded that the payment it received from Elkay might be a fraudulent conveyance because, if the defendant was in fact not a creditor of the debtor, the debtor did not receive "a reasonably equivalent value in exchange for such transfer." 11 U.S.C. § 548(a)(2)(A); *see also* 11 U.S.C. § 544(b) (incorporating state fraudulent conveyance law). However, because the trustee's complaint does not include a cause of action for fraudulent conveyance, that theory is not before the court.

The trustee counters the defendant's arguments by asserting that the debtor and Skyline were in fact the same entity, with separate corporate existences merely for tax purposes. In essence, the trustee argues that the debtor and its wholly owned corporate subsidiary were alter egos and that their separate corporate existences should be ignored. In an affidavit attached to the trustee's brief, Edward Oprendick, the debtor's chief financial officer between 1969 and 1991, states the following to support the trustee's alter ego theory: the debtor and Skyline observed little or no corporate formalities between the separate entities; the assets of the entities were extensively commingled, but Skyline had no assets of its own; Skyline maintained a separate bank account solely to pay local suppliers, but all other invoices were sent directly to and paid by the debtor; and the defendant's invoice lists the billing address of the debtor, not that of Skyline.

■ In rebuttal, the defendant argues that the trustee cannot use a theory of "reverse piercing of the corporate veil" in this context to establish that the debtor and its subsidiary were in fact alter egos. The defendant cites several cases for the well-settled principle that the alter ego doctrine cannot be used as a shield. *See Lumpkin v. Environdyne Indus., Inc.*, 933 F.2d 449, 460 (7th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991); *Boggs v. Blue Diamond Coal Co.*, 590 F.2d 655, 662–63 (6th Cir.), *cert. denied,* 444 U.S. 836, 100 S.Ct. 71, 62 L.Ed.2d 47 (1979); *Picture Lake Campground, Inc. v. Holiday Inns, Inc.*, 497 F.Supp. 858, 863 (E.D.Va.1980). As a general matter, the defendant is correct. Piercing the corporate veil is generally used by a creditor of a corporation to ignore the limited liability of the corporate form and to hold the shareholders liable for the debts of the corporation.

■ However, this case presents a novel twist on the piercing doctrine, known as "reverse piercing" of the corporate veil. In a reverse piercing case, the shareholder attempts to have the corporate form of his own corporation disregarded for his own benefit. *See Smith v. Richels (In re Richels)*, 163 B.R. 760, 763 (Bankr.E.D.Va.1994); *Halverson v. Schuster (In re Schuster)*, 132 B.R. 604, 607 (Bankr.D.Minn.1991). Here, the trustee is attempting to have the corporate form disregarded for the benefit of the debtor's estate. The trustee wants to have the debts of the subsidiary considered to be the debts of the parent-debtor so that the trustee can avoid the allegedly preferential payment to the defendant.[6]

■ Although piercing of the corporate veil is a matter of state law, the court's research has revealed no South Carolina law addressing the precise issue currently before the court. In considering this issue, the court is aware that "[i]t is settled authority that the doctrine of piercing the corporate veil is not to be applied without substantial reflection." *Sturkie v. Sifly*, 280 S.C. 453, 313 S.E.2d 316, 318 (Ct.App.1984). Moreover, the court recognizes that the "power to pierce the corporate veil ... is to be exercised 'reluctantly' and 'cautiously' and [that] the burden of establishing a basis for the disregard of the corporate fiction rests on the party asserting such claim." *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 683 (4th Cir.1976). With these guiding principles in mind, the court concludes that the defendant's motion for summary judgment should be denied.

Several courts have recognized a bankruptcy trustee's ability to bring an action for reverse piercing of the corporate veil. For example, in *Halverson v. Schuster (In re Schuster)*, 132 B.R. 604 (Bankr.D.Minn.1991), the court concluded that under Minnesota law the trustee could assert a cause of action for reverse piercing of the corporate veil for the benefit of the estate. In *Schuster*, the debtor's estate contained 50% of the stock of North Scooter Inn, Inc.[7] The trustee brought a reverse piercing action in an attempt to subject the corporate assets of

---

6. The court notes that if Skyline is considered the alter ego of Elkay, then one could argue that *all* of the assets and liabilities of Skyline should come into Elkay's bankruptcy estate.

7. This stock became part of the estate after the trustee avoided as a fraudulent conveyance a transfer of the stock to the debtor's wife. *Id.* at 606.

North Scooter Inn, Inc. to the creditors' claims allowed in the debtor's bankruptcy. The court determined that the trustee had standing to bring such an action because the trustee could "exercise all of the rights and powers of a shareholder in that corporation." *Id.* at 609. The *Schuster* court noted:

> At first glance, it seems paradoxical that the Trustee accedes to the remedy as a successor to a shareholder, but that he is allowed to use his predecessor's alleged failings and/or wrongdoings to support his invocation of the remedy. There is nothing inherently wrong with this, though. The Trustee is under a fiduciary duty to maximize the estate's recovery, and the return to the beneficiaries of his trust. He is to be an active agent on behalf of the interests of all claimants against the estate. As a result, he must pursue the remedy at issue here. The fact that the Trustee may exploit a shareholder's standing on a derivative basis, while complaining of that same shareholder's past actions as part of his case on the merits, does not bar the estate from seeking that relief. The Bankruptcy Code recognizes the estate's freedom to pursue its remedies, unfettered by the knowledge and past acts of its debtor-predecessor, in many ways; the "strongarm" provision of 11 U.S.C. § 544(a), which gives the trustee various transfer-avoidance powers under nonbankruptcy law "without regard to any knowledge of the trustee or of any creditor," is only the most salient example.

*Id.* at 609 n. 6 (citations omitted).

The court in *Schuster* examined Minnesota law on reverse piercing of the corporate veil and noted several situations in which courts have been willing to recognize this remedy. *See Warner v. Warner (In re Trust of Warner),* 263 Minn. 449, 117 N.W.2d 224 (1962) (allowing reverse piercing of corporate veil to give effect to a testator's wishes where specifically devised property was nominally titled in testator's solely held corporation, and where testator and third parties had historically treated property as being owned by testator personally); *Roepke v. Western Nat'l Mut. Ins. Co.,* 302 N.W.2d 350 (Minn. 1981) (allowing reverse piercing of corporate veil to allow stacking of no-fault auto insurance coverage where decedent was the sole shareholder of a corporation which owned six insured motor vehicles, and where decedent and his family members had always treated the vehicles has if they were personally owned by the decedent); *Cargill, Inc. v. Hedge,* 375 N.W.2d 477 (Minn.1985) (allowing reverse piercing of corporate veil to enable individual principals of family farm corporation to claim homestead exemption in property titled in corporation's name). The *Schuster* court focused on the equitable nature of the remedy of piercing the corporate veil and determined that the bankruptcy context provides a sufficient basis for allowing reverse piercing. 132 B.R. at 609–12.

Similarly, in *Smith v. Richels (In re Richels),* 163 B.R. 760 (Bankr.E.D.Va.1994), the court concluded that the trustee's action for reverse piercing of the corporate veil should survive the defendants' motion to dismiss. The *Richels* court stated that "a decision to pierce the corporate veil depends largely on resolving questions of fact." *Id.* at 763. The court cited the *Schuster* decision and determined that Virginia law did not preclude an action for reverse piercing of the corporate veil. *Id.* at 764.

Because the court is aware of no South Carolina law accepting or rejecting the remedy of reverse piercing, the court adopts the well-reasoned opinion of the *Schuster* court and determines that the bankruptcy trustee in this case can assert that the debtor corporation was the alter ego of its subsidiary corporation. Also, this court agrees with the *Richels* court that the determination of whether to pierce the corporate veil in reverse depends largely on the facts of the case. Viewing the facts and inferences therefrom in the light most favorable to the trustee in this case, the court concludes that genuine issues of material fact exist regarding the trustee's alter ego argument and that this issue should therefore be decided on its merits.

For the foregoing reasons, the defendant's motion for summary judgment is hereby denied.

**IT IS SO ORDERED.**