ANR COAL COMPANY, INC., Appellant,

v.

Richard MONEY, Trustee,
et al., Appellees.

Civ. No. 97–167–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

March 9, 1998.

Kevin Philip Oddo, Flippin, Densmore, Morse, Rutherford & Jessee, Roanoke, VA, for ANR Coal Company, Inc.

Fred M. Leonard, Office of Fred M. Leonard, Attorney, Bristol, TN, Robert Tayloe Copeland, Copeland, Molinary & Bieger, Abingdon, VA, Patrick L. Hayden, McGuire, Woods, Battle & Boothe, Norfolk, VA, for Richard Money, Trustee, Bodie Mining Company, Inc., Nationsbank, N.A., formerly Nationsbank of Virginia.

## OPINION

JONES, District Judge.

In this interlocutory appeal from an order of the bankruptcy court denying the appellant's motion to dismiss, the appellant contends that: (1) as a matter of law, it cannot be held liable under 11 U.S.C.A. § 506(c) (1993 & Supp.1997) for costs and expenses incurred by the bankruptcy trustee in preserving and disposing of certain equipment subject to a secured claim; (2) the trustee is barred by prior orders of the bankruptcy court from recovering any additional expenses for disposing of the secured property; and (3) as a matter of law, the trustee cannot recover his expenses from the appellant under 11 U.S.C.A. § 105 (1993 & Supp.1997). Holding that sections 506(c) and 105 do not preclude suit against the appellant for the trustee's expenses in disposing of the secured property, and that the effect of the consent orders requires further consideration by the bankruptcy court, I affirm.

### I. Standard of Review.

The bankruptcy court's conclusions of law are reviewed de novo by this court. *In re Tudor Associates, Ltd., II,* 20 F.3d 115, 119 (4th Cir.1994).

### II. Facts.

On April 20, 1992, Bodie Mining Company, the debtor, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. As of the date of the filing, the debtor was indebted to NationsBank, N.A. ("NationsBank") in the amount of $582,569.95. The debt was secured by NationsBank's first lien on all of the debtor's equipment, accounts receivable, and other assets and was guaranteed by ANR Coal Company, Inc. ("ANR"), the appellant, up to the amount of $250,000. On July 7, 1992, the trustee filed a motion to sell the equipment of the debtor free and clear of all liens. On July 15, 1992, NationsBank filed an objection to the trustee's motion, arguing that sale of the assets should not be permitted "unless the trustee receives sufficient funds from the proceeds to pay NationsBank in full and to pay the trustee's expenses in connection with the administration and the preservation of the assets."

On July 22, 1992, the bankruptcy court entered a consent order authorizing the trustee to sell the equipment and to retain ten percent of the sale proceeds and all of the proceeds of the debtor's accounts receivable, in payment of expenses incurred in preserving and disposing of the secured property. The remaining ninety percent of the sales proceeds were directed to be paid to NationsBank. On December 22, 1992,

NationsBank filed a motion to show cause alleging that the trustee had failed to comply with the consent order. As a result, a new consent order was entered, dated February 1, 1993, providing that the trustee would immediately pay NationsBank $3,000 and ninety-five percent of all future sales proceeds. The order further provided that "the Trustee is permitted to use ... five percent (5%) of the proceeds of each sale to pay the expenses incurred by the estate in connection with the preservation and sale of the Assets."

NationsBank ultimately received $458,000 from the trustee toward payment of its debt. NationsBank subsequently sued ANR in state court in an effort to collect on the $250,000 guarantee of the debtor's obligations to NationsBank. On June 18, 1993, approximately one year after the secured property had been sold by the trustee and the proceeds paid to NationsBank, Nations-Bank settled its claim with ANR. Pursuant to the settlement agreement ANR paid NationsBank $180,000 in satisfaction of the guarantee. In addition, NationsBank transferred to ANR, NationsBank's "right, title and interest in interests, security interests, security agreements, financing statements ... proofs of claim and other documents or writings relating to, evidencing, security, guaranteeing, perfecting or continuing the perfection of any security interest or lien for the Bodie Obligations ...." Notice of the transfer was filed with the bankruptcy court on November 2, 1993.

On April 14, 1994, the bankruptcy court entered an order, consented to by ANR, approving the sale of the final items of equipment held by the trustee, with the proceeds to be held pending allocation by the bankruptcy court. NationsBank was not involved with the order.

In March 1995, more than two and a half years after liquidation of the original equipment, the trustee filed an adversary proceeding against NationsBank seeking $406,917.25 for expenses allegedly incurred in liquidating the secured property. NationsBank moved to dismiss on the ground that it was no longer a secured creditor of the debtor because it had assigned its security interest to ANR. In light of NationsBank's motion, in April 1996, the bankruptcy court ordered that ANR be added to the suit as a defendant. Subsequently, ANR moved to dismiss the claim against it arguing that the alleged expenses could not be recovered from it as a matter of law and by the terms of the bankruptcy court's consent orders concerning sale of the debtor's equipment. On October 8, 1997, the bankruptcy court granted NationsBank's motion to dismiss and denied ANR's motion to dismiss.[1]

Thereafter ANR sought leave to take an immediate appeal from the bankruptcy court's interlocutory order pursuant to 28 U.S.C.A. § 158(a)(3) and Fed.R.Bankr.P. 8003. On October 30, 1997, I granted ANR's motion for leave to appeal. The issues have since been fully briefed and argued and the appeal is ripe for decision.

### III. Analysis.

"In reviewing a motion to dismiss, the court must accept all allegations of the complaint as true, construe the complaint in a light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff might be entitled to relief." *Smith v. Richels (In re Benn L. Richels)*, 163 B.R. 760, 762 (Bankr. E.D.Va.1994). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle it to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Accordingly, dismissal is limited to "extraordinary cases where the pleader makes allegations that show on the face of the complaint some insuperable bar to relief." Charles Alan Wright, *Law of Federal Courts* § 68 (1994).

ANR contends that: (1) as a matter of law the trustee cannot recover from it under section 506(c) of the Bankruptcy Code; (2) the bankruptcy court's consent orders governing sale of the debtor's property bar the trustee from recovering the alleged expenses from ANR; and (3) as a matter of law the

---

**1.** While I permitted NationsBank to participate in the argument, it is not technically a party to this appeal. The trustee did not seek an interlocutory appeal of the dismissal of NationsBank.

trustee cannot recover from ANR under section 105 of the Bankruptcy Code.

### A. Section 506(c).

Section 506(c) provides that "[t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing, of such property to the extent of any benefit to the holder of such claim." 506(c) is an exception to the general rule that "administrative expenses are paid from the unencumbered assets of a bankruptcy estate rather than from secured collateral." *Ford Motor Credit Co. v. Reynolds & Reynolds Co. (In re JKJ Chevrolet, Inc.)*, 26 F.3d 481, 483 (4th Cir.1994).

It is axiomatic that throughout the period that NationsBank remained the debtor's secured creditor, the trustee could have made a claim under section 506(c) for an amount of the sales proceeds equal to the costs the trustee incurred in preserving and disposing of the secured property. *In re Bob Grissett Golf Shoppes, Inc.*, 50 B.R. 598, 602 (Bankr.E.D.Va.1985). Here, however, because the trustee failed to make a claim for his expenses until more than two and a half years after the proceeds were paid to the original secured creditor, the novel question is presented as to whether the trustee may now recover from ANR, despite the fact that ANR never received any of the property proceeds and became the secured claim holder after the alleged expenses had been incurred, the property liquidated, and the proceeds paid to NationsBank.

While ANR may have compelling defenses on the merits, section 506(c) does not, as a matter of law, preclude the trustee's claim against ANR. ANR advances two arguments in support of a contrary finding: (1) it cannot be held liable under section 506(c) because it was not a secured creditor under Section 506(c); and (2) because it did not receive any of the proceeds of the secured property. In support of its initial contention, ANR asserts that the settlement agreement did not assign to ANR NationsBank's 506(c) liability for the secured property. Specifically, ANR argues that under the settlement agreement the only assignment made to it was NationsBank's rights *against* the debtor, not any possible claim of the debtor against NationsBank.

In view of the fact that the secured property had been liquidated and the proceeds paid out almost one year prior to the settlement, it is likely that the parties did not contemplate a suit by the trustee for 506(c) expenses. Nonetheless, NationsBank's assignment of its secured claim holder status to ANR is plainly set forth in the settlement agreement. The agreement transferred to ANR, NationsBank's

> right, title and interest in interests, *security interests, security agreements,* financing statements ... proofs of claim and other documents or writings relating to, evidencing, security, guaranteeing, perfecting or continuing the perfection of any security interest or lien for the Bodie Obligations .... The Assigned Rights shall include all of NationsBank's rights and claims arising under any agreement, instrument, contract, note, guaranty or other writing or document or under law or at equity or alleged in any pleading or claim filed in any court or with any tribunal or governmental authority relating to, arising under or in connection with or pertaining to, in whole or in part, the Bodie Obligations or any security therefore or guaranty or surety thereof and NationsBank shall not claim any right or interest contrary thereto.

Accordingly, I find that the settlement agreement conveyed to ANR NationsBank's standing as secured claim holder in the debtor's assets, including those previously disposed of by the trustee.

ANR also contends that it cannot be a secured claim holder for section 506(c) purposes because, assuming the settlement agreement did establish it as a secured claim holder, it did not become the claim holder until almost a year after the debtor's property had been liquidated and the proceeds paid to NationsBank. I disagree. The plain language of section 506(c) states that "[t]he trustee may recover ... necessary costs and expenses of preserving, or disposing, of such property to the extent of any benefit *to the holder of such claim.*" (emphasis added). On its face, the section imposes no temporal

requirement in order for liability to attach to the secured claim holder. Specifically, it does not require that a claim holder be the holder at the time that the expenses were incurred or at the time that the property was disposed of for the claim holder to be obligated. Accordingly, I conclude that ANR is a secured claim holder within the meaning of section 506(c).

■ ANR further contends that even if it is a secured creditor under section 506(c), it nevertheless cannot be held liable thereunder because it did not receive any of the proceeds of the secured property. While the phrase "from property" may suggest that section 506(c) provides only an in rem remedy, i.e., recovery only from the actual proceeds of the property, case authority is to the contrary, holding that in personam suits against the secured creditor are permissible. *In the Matter of Trim–X, Inc.*, 695 F.2d 296, 299 (7th Cir.1982); *Crownover v. Manufacturer's Hanover Commercial Corp. (In re Cent. Foundry Co.)*, 45 B.R. 395, 405 (Bankr.N.D. Ala.1984); *In re AFCO Enterprises, Inc.*, 35 B.R. 512, 514 (Bankr.D.Utah 1983). These decisions are premised on the legislative history of section 506(c) which clearly states Congress's intent that recovery be permitted from the collateral or the secured claim holder:

> Any time the trustee or debtor in possession expends money to provide for the reasonable and necessary cost and expenses of preserving ... a secured creditor's collateral, the trustee or debtor in possession *is entitled to recover such expenses from the secured party or from the property securing an allowed secured claim held by such party.*

124 Cong. Rec. H 11,095 (Sept. 28, 1978); 124 Cong. Rec. S 17,411 (Oct. 6, 1978) (emphasis added). Because section 506(c) does not chase the property, the fact that ANR did not actually receive the property or the proceeds of it, does not preclude a 506(c) claim against it.

■ In a related argument, ANR also asserts that it cannot be held liable under section 506(c) because NationsBank received all of the property proceeds and therefore, NationsBank received all of the "benefits" of the trustee's actions. Section 506(c) permits recovery only "to the extent of any benefit to the holder of such claim." While this provision requires that the secured claim holder benefit from the trustee's actions, it does not exclusively define "benefit" as the proceeds of the property. *Accord In re Olympia Holding Corp.*, 127 B.R. 478, 482 (Bankr. M.D.Fla.1991) (holding that "nothing in § 506(c) disqualifies a surcharge [for 506(c) expenses] depending on the ultimate recipient of the proceeds"); *In re Evanston Beauty Supply, Inc.*, 136 B.R. 171, 177 (Bankr. N.D.Ill.1992) (holding that secured claim holder who received proceeds of sale of secured property did not receive primary benefit and that guarantor, whose liability was reduced as a result of a higher sales price, did receive the primary benefit). Furthermore, as previously noted, it is well settled that a 506(c) claim may lie against the secured creditor in personam, regardless of how the secured property is disposed, or for what amount. *In the Matter of Trim–X, Inc.*, 695 F.2d at 299; *Crownover*, 45 B.R. at 405; *In re AFCO Enterprises, Inc.*, 35 B.R. at 514.

Here, the trustee may be able to prove that ANR directly benefitted from the trustee's efforts to preserve and dispose of the secured property. For example, the trustees may be able to prove that as a result of such actions, ANR's liability as guarantor of the debtor's obligations to NationsBank was reduced from $250,000 to $180,000. Finding that ANR is a secured claim holder of the property disposed of by the trustee, and finding that ANR may have directly benefitted from preservation and liquidation of the secured property, I conclude that ANR is a proper subject of the trustee's section 506(c) claim for expenses, at least at this stage of the litigation.

### B. Section 105.

■ Section 105 of the Bankruptcy Code provides the bankruptcy court with an expansive equity power to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C.A. § 105(a). ANR properly points out that while section 105 empowers the court with broad discretionary authority,

such equitable powers do not permit the court to grant relief where such relief is foreclosed under another provision of the Bankruptcy Code. *Official Comm. of Equity Sec. Holders v. Mabey,* 832 F.2d 299, 302 (4th Cir.1987). Accordingly, ANR argues that because section 506(c) precludes the trustee from recovering expenses from ANR, the court cannot grant relief under section 105.

 Having determined that the trustee's section 506(c) claim against ANR is not precluded, I also conclude that relief may also be granted under section 105. That relief may be granted under section 105 does not, however, necessitate granting such relief. To the contrary, the Fourth Circuit requires cautious exercise of section 105 authority. *Finney v. Smith (In re Vernon Lee Finney),* 992 F.2d 43, 44 (4th Cir.1993). The record, as developed thus far, reflects that the expenses the trustee now seeks to recover were directly addressed by the bankruptcy court's consent orders and that Nations-Bank and ANR drafted their settlement agreement almost one year after they believed the liquidation process to be entirely complete. Moreover, the trustee may have been dilatory in waiting to recover costs incurred almost two and half years earlier. The bankruptcy court's development of the facts may well convince it that equitable considerations do not support the trustee's claims. Nevertheless, those considerations are not applicable at the pleading stage of the case.

### C. Consent Orders.

ANR contends that regardless of any section 506(c) or 105 claims, the trustee is barred from recovery by the consent orders entered by the court on July 22, 1992, and February 1, 1993, because those orders directly addressed the amounts to be retained by the trustee for his expenses. The trustee counters that he should not be bound by the

consent orders because of mutual mistake of fact.[2] Specifically, he argues that the amounts agreed to in the orders were estimates and that the parties underestimated the expenses of preserving and liquidating the property and overestimated the amounts the equipment would bring at auction.

 The parties' intent with regard to the consent orders is a matter yet to be determined by the bankruptcy court and not fully developed on the record. Both ANR and the trustee properly recognize that the parties' intent, as expressed in the consent orders and the record, will ultimately determine the preclusive effect of the orders. *Keith v. Aldridge,* 900 F.2d 736, 740–41 (4th Cir.1990). Moreover, it will be the trustee's burden to convince the bankruptcy court that the mistake was in fact mutual. *Bankers Trust v. 236 Beltway Investment,* 865 F.Supp. 1186, 1198 (E.D.Va.1994).

### IV. Conclusion.

For the reasons set forth above, I conclude that however difficult the trustee's ultimate factual burden of proof may be in this case, the bankruptcy court was not in error in denying ANR's motion to dismiss. Accordingly, I will affirm the interlocutory order.

An appropriate final judgment will be entered.

---

2. In response to this argument, ANR contends that Fed.R.Civ.P. 60(b), made applicable by Fed. R.Bankr.P. 9024 and requiring that a motion for relief from an order on the grounds of mistake must be made within one year after the order was entered, time bars any such motion by the trustee. Rule 60(b), by its express terms, applies only to "a final judgment, order, or proceeding."

*In re Wright,* 186 B.R. 394 (Bankr.D.Md.1995). The consent orders entered by the bankruptcy court are not final orders. *See In re MMS Builders, Inc.,* 101 B.R. 426, 430 (D.N.J.1989). Accordingly, rule 60(b) would not apply to bar a motion for relief by the trustee, although as previously noted equitable considerations may nevertheless preclude granting such a motion.