**STENOGRAPH CORPORATION, Plaintiff–Appellant, Cross– Appellee,**

v.

**Bennie C. FULKERSON and Michael A. Smith, Defendants–Appellees, Cross–Appellants.**

Nos. 91–2525, 91–2613, 91– 2654 and 91–2730.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 1992.

Decided July 23, 1992.

As Amended on Denial of Rehearing Sept. 16, 1992.

James B. Blanchard (argued), Leif R. Sigmond, Jr., Steven P. Shurtz, Willian, Brinks, Olds, Hofer, Gilson & Lione, Chicago, Ill., for plaintiff-appellant.

Eric A. Oesterle, Gerald E. Fradin, Sonnenschein, Nath & Rosenthal, Chicago, Ill., Charles N. Branton, Slidell, La. (argued), for defendants-appellees.

Before CUDAHY and COFFEY, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

CUDAHY, Circuit Judge.

Bennie C. Fulkerson and Michael A. Smith, citizens of Louisiana, jointly owned a patent on an electric stenograph machine. Stenograph Corporation, a Delaware corporation headquartered in Illinois, owned a patent covering various features of a similar device. The parties entered into an agreement in 1982 that settled a variety of legal disputes. The settlement was quite satisfactory for several years, until an unexpected event occurred that rendered the provisions of the settlement agreement arguably ambiguous. Stenograph and Fulkerson and Smith sued each other (again) in 1991. Stenograph does not want to pay royalties to Fulkerson and Smith. Fulkerson and Smith want the royalty payments to continue and want liquidated damages against Stenograph for bringing its lawsuit in the first place. The district court granted summary judgment to Fulkerson and Smith on the payments issue but gave judgment against them on their claim for liquidated damages. Both sides appealed. We consolidated the appeals and now affirm.

## I.

The facts are not disputed. The following account is drawn from the May 31, 1991 Memorandum Opinion and Order of the district court and from the submissions of the parties.

Fulkerson and Smith invented an electric stenograph and formed a company, Lektro–Graph, to manufacture and sell their invention. Stenograph, too, made an electric stenograph machine. In 1981, Stenograph sued Fulkerson and Smith in Illinois, seeking a declaration that their patent was invalid and that Stenograph's products did not infringe the patent. Fulkerson and Smith (through Lektro–Graph) sued Stenograph in Louisiana in 1982, claiming violations of the antitrust laws.

After Stenograph filed suit in Illinois, but before Lektro–Graph sued in Louisiana, Fulkerson and Smith brought another party into the dispute by granting Baron Data Systems, another competitor, an exclusive license and an option to purchase their patent. Baron, in turn, lent Fulkerson and Smith $50,000 to finance the ongoing litigation.

The parties agreed to non-binding arbitration of their patent dispute. After the arbitrator found that Stenograph's machines did infringe part of the Fulkerson and Smith patent, the parties settled. In the settlement agreement, Stenograph agreed to buy the Fulkerson and Smith patent, in its entirety, for $400,000. Further, Stenograph agreed to pay future compensation to Fulkerson and Smith based on the number of electric stenograph machines Stenograph sold. Stenograph also agreed to pay Fulkerson and Smith 40% of the royalties it received from licensing the Fulkerson and Smith patent to others (subject to a minimum payment per machine sold).

Since Baron owned an exclusive license on the Fulkerson and Smith patent, the settlement could not be achieved without Baron's assent. To placate Baron, Stenograph agreed to pay off Baron's $50,000 loan to Fulkerson and Smith and to make a further $50,000 payment. Further, Stenograph agreed to give Baron a non-exclusive, but royalty-free, license to use the Fulkerson and Smith patent and its own patent. Fulkerson and Smith agreed in turn that Stenograph would not have to make payments to them based on Baron's sales. The key provision is paragraph 2.4 of the settlement agreement:

In consideration of this Agreement, and for the acts to be performed by Fulkerson and Smith under this Agreement, including assignment of the Fulkerson and Smith patent, Stenograph shall pay to Fulkerson and Smith the following:

(a) the sum of $400,000.00 at the time this Agreement is executed; and

(b) future compensation based on:

(i) electrical stenograph machines sold by Stenograph, its corporate subsidiaries, its corporate parent and/or any other company controlled through stock ownership

or otherwise by Stenograph or by any entity owning or controlling Stenograph through stock ownership or otherwise (hereinafter where appropriate all referred to as "Stenograph") after January 1, 1985 (irrespective of the date on which the order for such machines was received or accepted by Stenograph).... [$60 for each "encoding" electrical stenograph machine and $20 for each "non-encoding" electrical stenograph], and

(ii) 40% of any payments received by Stenograph as royalties from licensing or sublicensing of the Fulkerson and Smith patent, provided that all such payments to Fulkerson and Smith ... shall be at the rate of at least $24.00 for each such encoding machine and at least $8.00 for each such non-encoding machine, except that no payments shall be due Fulkerson and Smith on account of sales by Baron under the royalty-free license to be granted Baron in accordance with Section 2.5 of this Agreement.

The settlement agreement worked well for a while. But in February 1990, Stenograph bought Baron. This event brought two parts of paragraph 2.4 into apparent conflict. On the one hand, Stenograph must pay Fulkerson and Smith for each stenographic machine sold by Stenograph or its subsidiaries. Agreement ¶ 2.4(b)(i). On the other hand, "no payments shall be due Fulkerson and Smith on account of sales by Baron under the royalty-free license." Agreement ¶ 2.4(b)(ii).

Stenograph argues that the machines it sells are now "sales by Baron" for which Stenograph owes no royalties to Fulkerson and Smith. As a back-up argument, Stenograph argues that we should supply a term allegedly missing from the contract and provide that Stenograph need only pay royalties on a percentage of the machines it sells, as determined by the historical ratio of Stenograph's sales to Baron's sales. Finally, Stenograph argues that, at the very least, it is not liable for royalty payments on the 230 stenograph machines that were in Baron's inventory when Stenograph bought it.

Fulkerson and Smith, of course, object to Stenograph's characterization of its sales after the acquisition of Baron. They believe that the plain language of paragraph 2.4(b)(i) clearly controls Stenograph's obligations. Further, Fulkerson and Smith point to another provision of the agreement in which Stenograph agreed not to "initiate any judicial proceeding involving the Fulkerson and Smith patent," "initiate any reissue or reexamination proceeding in the United States Patent and Trademark Office" or "do any other act disclaiming or otherwise adversely affecting the enforceability of any claim or claims of the Fulkerson and Smith patent or the enforceability of the Fulkerson and Smith patent as a whole." Agreement ¶ 2.9. Fulkerson and Smith claim that the present lawsuit violates paragraph 2.9, entitling them to liquidated damages under paragraph 2.10.

## II.

Resolution of these appeals depends on the interpretation of a legal document. None of the parties argues that summary judgment was inappropriate. *Ryan v. Chromalloy American Corp.*, 877 F.2d 598, 602 (7th Cir.1989) ("[S]ummary judgment is particularly appropriate in cases involving the interpretation of contractual documents."). Our review is *de novo, id.*, and we apply Illinois law to the construction of the settlement agreement. *In re Iowa R. Co.*, 840 F.2d 535, 543 (7th Cir.) (substantive law of forum applies in diversity cases unless parties argue otherwise), *cert. denied*, 488 U.S. 899, 109 S.Ct. 244, 102 L.Ed.2d 233 (1988). We take the arguments of the parties in the order presented above.

As to Stenograph's claim that its sales are now royalty-free, we agree with the careful analysis of the district court. Judge Conlon observed that Baron's royalty-free license came from Stenograph, not from Fulkerson and Smith. Memorandum Opinion and Order at 9, 1991 WL 99011 (May 31, 1991) (Mem. Op.); Agreement ¶ 2.5(b) ("Stenograph shall ... execute ... a LICENSE AND RELEASE ... giving Baron a non-exclusive royalty-free, irrevo-

cable license and right...."). Stenograph, in turn, was not obligated to pay "future compensation" (not "royalties"[1]) to Fulkerson and Smith on account of Baron's sales "under the royalty-free license to be granted Baron [by Stenograph]." Agreement ¶ 2.4(b)(ii). Accordingly, when Stenograph bought Baron, it bought Baron's right not to pay royalties to Stenograph. Stenograph could not buy Baron's right not to pay royalties to Fulkerson and Smith, because that right never existed. Mem.Op. at 9.

■ On appeal, Stenograph's entire argument continues to rest on its inaccurate characterization of Baron's license as a right not to pay royalties to Fulkerson and Smith. In particular, Stenograph argues that the court's interpretation of the agreement ignores the assignability clause of the settlement agreement. But even if we assume that the assignability clause makes Baron's license assignable, a dubious proposition,[2] the court's interpretation does not wipe out that right: Stenograph could still sell Baron's license to someone else and would not have to compensate Fulkerson and Smith for sales of stenographic machines by the new owner of the license. The fact that Baron's license has little value while in Stenograph's hands is irrelevant.

We also reject Stenograph's alternative argument that we should supply a term missing from the settlement agreement and hold Stenograph liable to pay only for its previous share of the combined Stenograph/Baron sales. The agreement is quite unambiguous on this point: paragraph 2.4(b)(i) specifies that Stenograph must make payments based on its sales.

Stenograph is not liable for sales by Baron under Baron's royalty-free license, but there is no indication that Baron continues to have any independent existence, that Baron is selling stenographic machines or that Stenograph, even if it sells machines that bear Baron's mark, does so "under the royalty-free license." Agreement ¶ 2.4(b)(ii). As the facts are presented to us, the terms of the agreement do not conflict and are not ambiguous. Under these circumstances, we have no brief to change the terms of the settlement. *Wikoff v. Vanderveld*, 897 F.2d 232, 238 (7th Cir.1990) (applying Illinois law).

■ We also agree that Stenograph must make payments under the settlement agreement for the stenographic machines that it sold from Baron's inventory. Stenograph argues that under normal patent law principles, no royalties are due to the owner of a patent when a product made under license is resold. *Unidisco, Inc. v. Schattner*, 824 F.2d 965, 968 (Fed.Cir.1987), *cert. denied*, 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 860 (1988). Stenograph is correct about the law, but the principle has no application here. First, as noted, Fulkerson and Smith do not own the patent, and Stenograph is not paying them royalties. Instead, Stenograph is paying Fulkerson and Smith "future compensation" based on its sales. Second, even if Stenograph's payments to Fulkerson and Smith could be characterized as royalties, the default rule that Stenograph cites would seem to have no application when the reseller, as well as the licensee, has contracted to pay royalties to the owner of the patent. Stenograph's obligations are spelled out by the settlement agreement, and the default rules applicable to patent infringement cases do not

---

1. Black's Law Dictionary defines "royalty" generally as "share of product or profit reserved by *owner* for permitting another to use the property." (5th ed. 1979) (emphasis added). Fulkerson and Smith no longer own the patent, so payments to them would not appear to be royalties.

2. The assignability clause of the settlement agreement provides that "This Agreement shall extend to and be binding on all heirs, successors and assigns of Stenograph, Fulkerson, Smith, Lektro–Graph, and Baron." Agreement ¶ 4.1.

The clause does not specify that Baron's license, which was attached to, but not a part of the agreement, is assignable. The license itself does not specify that it is assignable either. Patent licenses are *not* assignable in the absence of express language. *Unarco Industries, Inc. v. Kelley Co.*, 465 F.2d 1303, 1306 (7th Cir.1972) (applying federal common law, but noting that Illinois law is the same), *cert. denied*, 410 U.S. 929, 93 S.Ct. 1365, 35 L.Ed.2d 590 (1973); *Gilson v. Republic of Ireland*, 787 F.2d 655, 658 (D.C.Cir.1986).

apply. There is no question that Stenograph sold the 230 machines and that it must pay Fulkerson and Smith when it sells electric stenograph machines.

 Finally, we agree with Judge Conlon that Stenograph does not owe liquidated damages for bringing this lawsuit. Stenograph agreed not to challenge the validity of the Fulkerson and Smith patent in any judicial or administrative proceeding. Agreement ¶ 2.9.[3] Presumably, this provision protected Fulkerson and Smith in the event that Stenograph tried to subvert the settlement agreement by invalidating the patent. But this lawsuit has nothing to do with the validity of the Fulkerson and Smith patent and everything to do with the interpretation of the settlement agreement. Stenograph did not violate paragraph 2.9 in bringing this suit, and does not owe liquidated damages.

### III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

**3.** In relevant part, paragraph 2.9 provides:
Notwithstanding any other provision of this Agreement, without the prior written consent of Fulkerson and Smith, Stenograph shall not initiate any judicial proceeding involving the Fulkerson and Smith patent and shall not initiate any reissue or reexamination proceeding in the United States Patent and Trademark Office involving the Fulkerson and Smith patent or file any paper in the United States Patent and Trademark Office or do any other act disclaiming or otherwise adversely affecting the enforceability of any claim or claims of the Fulkerson and Smith patent or the enforceability of the Fulkerson and Smith patent as a whole....