## In re OUTBOARD MARINE CORPORATION, et al., Debtors.

## Alex D. Moglia, Chapter 7 Trustee for Outboard Marine Corporation, et al., Plaintiff,

v.

## Inland Plywood Company, Defendant.

Bankruptcy No. 00–B–37405.
Adversary No. 03–A–02109.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Sept. 11, 2003.

---

Kathleen H. Klaus, Esq., Mark L. Radtke, Esq., Shaw Gussis Fishman Glantz Wolfson & Towbin, LLC, Chicago, IL, for Plaintiff.

Stephen M. Gross, Esq., William E. Hawley, Esq., Lindahl Gross Lievois, P.C., Bingham Farms, MI, for Defendant.

Alex Moglia, Esq., Alex D. Moglia & Associates, Inc., Schaumburg, IL, trustee.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the motion of Inland Plywood Company ("Inland") for partial summary judgment and the cross-motion of Alex D. Moglia, the Chapter 7 Trustee for Outboard Marine Corporation and its related debtor entities (the "Trustee"), for summary judgment pursuant to Federal Rule of Bankruptcy Procedure 7056 and Federal Rule of Civil Procedure 56. For the reasons set forth herein, the Court finds that 11 U.S.C. § 546(a) is a true statute of limitations that was tolled by the parties and, accordingly, denies Inland's motion but grants the Trustee's motion. Inland's fourth affirmative defense is dismissed.

## I. *JURISDICTION AND PROCEDURE*

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

## II. *APPLICABLE STANDARDS*

### A. *Summary Judgment*

In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) reads in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). *See also Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398, 402 (7th Cir.1998).

The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Trautvetter v. Quick*, 916 F.2d 1140, 1147 (7th Cir.1990); *Farries v. Stanadyne/Chicago Div.*, 832 F.2d 374, 378 (7th Cir.1987), *quoting Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Ass'n of Indianapolis*, 806 F.2d 146, 149 (7th Cir. 1986). Where the material facts are not in dispute, the sole issue is whether the moving party is entitled to a judgment as a matter of law. *ANR Advance Transp. Co. v. Int'l Bhd. of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir.1998). In 1986, the United States Supreme Court decided a trilogy of cases which encourages the use of summary judgment as a means to dispose of factually unsupported claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *Matsushita*, 475 U.S. at 585–86, 106 S.Ct. 1348.

All reasonable inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998). The existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Frey v. Fraser Yachts*, 29 F.3d 1153, 1156 (7th Cir.1994). "[S]ummary judgment is not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir.1990). The Seventh Circuit has noted that trial courts must remain sensitive to fact issues where they are actually demonstrated to warrant denial of summary judgment. *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1065–66 (7th Cir.2000); *Szymanski v. Rite–Way Maint. Co., Inc.*, 231 F.3d 360, 364 (7th Cir.2000).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, identifying those portions of the "pleadings, depositions, answers to inter-

rogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings; rather its response must show that there is a genuine issue for trial. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Patrick v. Jasper County,* 901 F.2d 561, 565 (7th Cir.1990). The manner in which this showing can be made depends upon which party will bear the burden of persuasion at trial. If the burden of persuasion at trial would be on the non-moving party, the party moving for summary judgment may satisfy Rule 56's burden of production either by submitting affirmative evidence that negates an essential element of the non-moving party's claim or by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *See Union Nat'l Bank of Marseilles v. Leigh (In re Leigh),* 165 B.R. 203, 213 (Bankr.N.D.Ill.1993) (citation omitted).

Rule 56(d) provides for the situation when judgment is not rendered upon the whole case, but only a portion thereof. The relief sought pursuant to subsection (d) is styled partial summary judgment. Partial summary judgment is available to dispose of only one or more counts of the complaint in their entirety. *Commonwealth Ins. Co. of N.Y. v. O. Henry Tent & Awning Co.,* 266 F.2d 200, 201 (7th Cir. 1959); *Biggins v. Oltmer Iron Works,* 154 F.2d 214, 216–17 (7th Cir.1946); *Quintana v. Byrd,* 669 F.Supp. 849, 850 (N.D.Ill. 1987); *Arado v. General Fire Extinguisher Corp.,* 626 F.Supp. 506, 509 (N.D.Ill.

1985); *Capitol Records, Inc. v. Progress Record Distrib. Inc.,* 106 F.R.D. 25, 28 (N.D.Ill.1985); *Strandell v. Jackson County, Ill.,* 648 F.Supp. 126, 136 (S.D.Ill.1986); *In re Network 90 Degrees, Inc.,* 98 B.R. 821, 831 (Bankr.N.D.Ill.1989). Rule 56(d) provides a method whereby a court can narrow issues and facts for trial after denying in whole or in part a motion properly brought under Rule 56. *Capitol Records,* 106 F.R.D. at 29. In the case at bar, the Trustee and Inland seek partial summary judgment as their motions relate only to Inland's fourth affirmative defense.

The parties have filed cross-motions for summary judgment. Each motion must be ruled on independently and must be denied if there are genuine issues of material fact. *ITT Indus. Credit Co. v. D.S. America, Inc.,* 674 F.Supp. 1330, 1331 (N.D.Ill. 1987). Cross-motions for summary judgment do not require the Court to decide the case on the motions; the Court can deny both motions if both parties have failed to meet the burden of establishing that any genuine issue of material fact exists and that they are entitled to judgment as a matter of law. *Id.; Pettibone Corp. v. Ramirez (In re Pettibone Corp.),* 90 B.R. 918, 922 (Bankr.N.D.Ill.1988).

Summary judgment is appropriate in cases involving the interpretation of contractual documents. *Stenograph Corp. v. Fulkerson,* 972 F.2d 726, 728 (7th Cir. 1992); *Ryan v. Chromalloy Am. Corp.,* 877 F.2d 598, 602 (7th Cir.1989). "[S]ummary judgment should be entered only if the pertinent provisions of the contractual documents are unambiguous; it is the lack of ambiguity within the express terms of the contract that forecloses any genuine issues of material fact." *Ryan,* 877 F.2d at 602 (citation omitted). Construing the language of a contract is a question of law appropriate for summary judgment, unless the contract is ambiguous. *Reaver v. Rub-*

*loff–Sterling,* L.P., 303 Ill.App.3d 578, 581, 236 Ill.Dec. 973, 708 N.E.2d 559, 561 (3d Dist.), *appeal denied,* 184 Ill.2d 573, 239 Ill.Dec. 614, 714 N.E.2d 533 (1999); *Ford v. Dovenmuehle Mortgage, Inc.,* 273 Ill. App.3d 240, 244, 209 Ill.Dec. 573, 651 N.E.2d 751, 754 (1st Dist.1995) (citations omitted). These points are pertinent to the motions at bar because the parties entered into a contractual agreement (and, subsequently, an amendment to that agreement) that purportedly tolled the applicable statute of limitations (the "Tolling Agreement").

Local Bankruptcy Rule 7056–1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Illinois, which deals with summary judgment motions, was modeled after LR56.1 of the Local Rules of the United States District Court for the Northern District of Illinois. Hence, the case law construing LR56.1 and its predecessor Local Rule 12 applies to Local Bankruptcy Rule 7056–1.

Pursuant to Local Bankruptcy Rule 7056–1, a motion for summary judgment imposes special procedural burdens on the parties. Specifically, the Rule requires the moving party to supplement its motion and supporting memorandum with a statement of undisputed material facts ("7056–1 statement"). The 7056–1 statement "shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion." Local Bankr.R. 7056–1B.

Inland filed a 7056–1 statement that complies with this Rule in part. It contains numbered paragraphs setting out undisputed facts. However, the paragraphs do not include specific references to any part of the record or to any supporting materials relied upon to bolster the facts set forth. Nor are there any such affidavits, exhibits, or other documents attached to the statement. The seven numbered paragraphs, in their entirety, merely mirror those offered in Inland's memorandum in support of its motion.

In contrast, the Trustee's 7056–1 statement fully complies with the Rule. It includes numbered paragraphs establishing uncontested facts with specific references to attached exhibits, as well as the unsworn declaration of Janice A. Alwin ("Alwin"). Alwin is the attorney who represents Moglia in his capacity as the Chapter 7 Trustee of *Outboard Marine Corporation* and its related debtor entities ("OMC"). *See* Alwin Declaration at ¶¶ 1 and 2. She is familiar with OMC's books and records, including the payments OMC made to Inland during the ninety days prior to the bankruptcy petition date ("Preference Period"); the correspondence between the Trustee and Inland regarding Inland's return of the payments; and the Tolling Agreement entered into by the parties. *See id.* at ¶¶ 4–8.

Specifically, Alwin states that OMC made payments totaling over $1 million from its own funds to Inland or for its benefit during the Preference Period. *Id.* at ¶ 4. She avers that, subsequently, counsel for the Trustee requested that Inland return the payments, but that Inland maintained that it had valid defenses to the Trustee's demand. *Id.* at ¶¶ 5 and 6. Alwin further states that, during the course of trying to resolve the dispute, the parties entered into a written agreement whose purpose was to extend the statute of limitations date governing avoidance actions under the Bankruptcy Code. *Id.* at ¶¶ 6 and 7. According to Alwin, the parties agreed to toll the time between December 1, 2002 and December 22, 2002; an amend-

ment to the original agreement continued the tolling period through and including June 3, 2003. *Id.* at ¶¶ 7 and 8. Finally, Alwin states that the parties agreed to extend the tolling period again—through and including July 15, 2003—but that before they were able to execute another amendment to the agreement, Inland's counsel informed counsel for the Trustee that Inland intended to object to the Tolling Agreement based on the statute of limitations. *Id.* at ¶ 9. Subsequently, the Trustee filed a complaint against Inland for avoidance and recovery of the payments and disallowance of Inland's proofs of claim. *Id.* at ¶ 10.

The party opposing a summary judgment motion is required by Local Rule 7056–2 to respond ("7056–2 statement") to the movant's 7056–1 statement, paragraph by paragraph, and to set forth any material facts that would require denial of summary judgment, specifically referring to the record for support of each denial of fact. Local Bankr.R. 7056–2. The opposing party is required to respond "to each numbered paragraph in the moving party's statement" and make "specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Bankr.R. 7056–2A(2)(a). Most importantly, "[a]ll material facts set forth in the [7056–1] statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Bankr.R. 7056–2B. Both Inland and the Trustee have wholly complied with this Rule. Each party has responded to the other's 7056–1 statement paragraph by paragraph, making specific references to supporting materials relied upon as required under the Rule.

## B. *11 U.S.C. § 546(a)*

The focus of this matter is the interpretation not only of the Tolling Agreement entered into by the parties, but also of § 546 of the Bankruptcy Code. Section 546 sets forth the statute of limitations for a trustee's avoidance powers, including those under § 547.[1] Section 546(a) provides as follows:

> (a) An action or proceeding under section ... 547 ... of this title may not be commenced after the earlier of—
>> (1) the later of—
>>> (A) 2 years after the entry of the order for relief; or
>>> (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such

---

1. Pursuant to § 547 of the Bankruptcy Code, a trustee can avoid certain preferential transfers made by a debtor to a creditor prior to the filing of the debtor's bankruptcy petition. Section 547(b) provides, in pertinent part:

   > [T]he trustee may avoid any transfer of an interest of the debtor in property—
   > (1) to or for the benefit of a creditor;
   > (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
   > (3) made while the debtor was insolvent;
   > (4) made—
   >> (A) on or within 90 days before the date of the filing of the petition; or
   >> (B) between ninety days and one year before the date of the filing of the petition,

   if such creditor at the time of such transfer was an insider; and
   > (5) that enables such creditor to receive more than such creditor would receive if—
   >> (A) the case were a case under chapter 7 of this title;
   >> (B) the transfer had not been made; and
   >> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

   11 U.S.C. § 547(b). The Trustee's complaint of June 20, 2003 alleges that, as a result of the payments made by OMC to Inland during the ninety days prior to commencement of OMC's bankruptcy case, Inland is a transferee of a transfer avoidable under 11 U.S.C. § 547. Complaint at ¶ 21.

election occurs before the expiration of the period specified in subparagraph (A); or

(2) the time the case is closed or dismissed.

11 U.S.C. § 546(a). Thus, for purposes of this case, § 546 provides that an action under § 547 must be commenced within the later of two years after the order for relief or one year after the appointment of the Trustee under § 702 (election of a trustee by creditors in Chapter 7 cases), if that appointment is made within the two-year period following the order for relief. *Id.*

### III. *UNDISPUTED FACTS AND BACKGROUND*

The parties do not dispute any of the material facts in this case. On December 22, 2000, OMC filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. *See* Complaint at ¶ 1. The case was converted to Chapter 7 on August 20, 2001.[2] *Id.* at ¶ 2. Shortly thereafter, on August 24, 2001, Alex Moglia was appointed as the Chapter 7 Trustee of the Debtor's estate. *Id.*; Inland's Memorandum in Support of Its Motion for Summary Judgment at ¶ 6.

Inland provided goods or services to OMC before the bankruptcy petition date or during the ninety days prior to the commencement of OMC's bankruptcy case. *See* Complaint at ¶ 6. During the preference period, OMC made payments of $1,004,352.20 from its own funds directly to Inland or for its benefit. *Id.* at ¶ 10. OMC was insolvent during the Preference Period. *Id.* at ¶ 8.

On August 9, 2002, counsel for the Trustee wrote to Inland, asking that the preferential payments be returned to OMC's estate. Alwin Declaration at ¶ 5. Ten days later, Inland responded, noting that it had legitimate defenses to the Trustee's demand. *Id.* at ¶ 6. Subsequently, information was exchanged between the parties in an effort to resolve the dispute. *Id.* As resolution attempts continued, the parties executed a Tolling Agreement on November 21, 2002 to toll the running of the statute of limitations from December 1, 2002 to December 22, 2002. *Id.* at ¶ 7. The text of the Tolling Agreement, in its entirety, reads as follows:

WHEREAS, Alex D. Moglia, not individually but as chapter 7 trustee ("Trustee") for Outboard Marine Corporation and its related debtor entities ("OMC") believes that OMC's bankruptcy estate may have claims against Inland Plywood Company ("Inland") under 11 U.S.C. §§ 547, 548 and other sections of the bankruptcy code and common law (jointly, "Avoidance Actions"); and

WHEREAS, Inland believes that it has defenses to the Avoidance Actions; and

WHEREAS, the Trustee and Inland agree that it would not be in either party's interest to initiate litigation concerning the Avoidance Action at this time;

NOW THEREFORE, in consideration of the recitals and mutual exchange of promises contained in this Tolling Agreement, the parties hereto agree as follows:

---

**2.** There seems to be some confusion as to the date that the bankruptcy case was converted from Chapter 11 to Chapter 7. In its answer, Inland admits that the date of conversion was August 22, 2001 as noted in the Trustee's complaint. However, in the statement of un- disputed material facts section of its memorandum in support of its motion for summary judgment, Inland notes that the case was converted on August 21, 2001. The conversion was actually filed on August 20, 2001; the date of entry was August 22, 2001.

1. All applicable statutes of limitations and other timebased defenses (including the limitations set forth in 11 U.S.C. § 546) to the Avoidance Actions, are hereby tolled as of December 1, 2002 for a period to and including March 3, 2003, as to any Avoidance Action which would not have been barred had any such Avoidance Action been properly filed in a court of competent jurisdiction prior to December 1, 2002.

2. The Parties agree that the time elapsed between December 1, 2002 and the termination of this Tolling Agreement under either paragraph 4 or 5 below ("Termination Date") shall be excluded from any computation of time for purposes of any time-based argument or time-based defense based on statutes of limitations, laches, estoppel, waiver, and any other time-based defense or right. As of the termination of this Tolling Agreement, the rights of the Trustee with respect to any Avoidance Action against Inland shall be as they were immediately prior to the Termination Date with respect to the interposition of any time-based argument or time-based defense based on statutes of limitations, laches, estoppel, waiver, and any other time-based defense or right and any and all time periods tolled by this Tolling Agreement shall resume running.

3. Nothing herein shall be deemed as any admission of wrongdoing, liability or culpability of any kind. This Tolling Agreement shall not be offered, received or introduced as evidence or used for any purpose whatsoever in any action or proceeding which may ensue in the event that the matter cannot be amicably resolved, nor shall this Agreement toll any statute of limitations which may have run before December 1, 2002.

4. This Tolling Agreement will automatically terminate on March 31, 2003 at 5:00 p.m. Central Standard Time unless extended by written agreement of the parties.

5. Either party may terminate this Tolling Agreement by giving written notice to the other party. The termination shall be effective 15 calendar days after actual receipt of the notice of termination.

Alwin Declaration at ¶ 7 and Exhibit 1 attached to Declaration.

On March 26, 2003, the parties executed an Amendment to the Tolling Agreement, extending the tolling period through and including June 3, 2003. Alwin Declaration at ¶ 8 and Exhibit 2 attached to Declaration. On June 18, 2003, the parties agreed to extend the tolling period again— through and including July 15, 2003. Alwin Declaration at ¶ 9. However, before another amendment could be executed, counsel for Inland announced its intention to object to the Tolling Agreement on the basis of the statute of limitations. *Id.*

Two days later, on June 20, 2003, the Trustee filed a three-count complaint against Inland to avoid and recover the preferential transfers. Inland filed an answer and asserted six affirmative defenses on July 18, 2003.[3] On the same day, In-

---

**3.** The six affirmative defenses are, briefly, as follows:

(1) The transfers are not subject to avoidance under § 547(c)(4) because Inland gave new value to or for the benefit of OMC subsequent to the receipt of the transfers.

(2) Many of the transfers are not subject to avoidance under § 547(c)(2) because they were in payment of debts incurred by OMC in the ordinary course of business.

(3) Many payments alleged to be preference payments are, in fact, contemporaneous exchanges for new value.

(4) The complaint is time-barred, barred by the applicable statute of limitations, the doc-

land moved for summary judgment based on the fourth affirmative defense, which asserts that the Trustee's complaint "is time barred, barred by the applicable statute of limitations, the doctrine of laches, and is jurisdictionally time barred." July 18, 2003 Answer at 7. In short, Inland contends that the Trustee brought the adversary proceeding almost six months after the time for bringing such an action. On July 22, 2004, the Trustee filed a cross-motion for summary judgment based on Inland's fourth affirmative defense. He alleges that he had twenty-one days, as of December 1, 2002, to bring an avoidance action pursuant to the Tolling Agreement and that he initiated the adversary proceeding within twenty-one days of the expiration of the Agreement. *See* Trustee's Response to Motion for Summary Judgment at 4–5.

## IV. DISCUSSION

As discussed above, there are no factual issues in dispute in this case. Instead, at the heart of the matter are the proper interpretations of § 546(a) and of the Tolling Agreement executed by the parties. Accordingly, the dispute may be resolved by means of summary judgment.

At issue is whether the Trustee's complaint to avoid preference payments made by OMC to Inland is time-barred by the statute of limitations set forth in § 546(a), where the adversary proceeding was initiated more than two years after the commencement of the bankruptcy case, but where the parties entered into a Tolling Agreement to extend the date governing avoidance actions under the Bankruptcy Code. More specifically, the Court must decide first whether the limitations period prescribed in § 546(a) is a true statute of limitations and therefore waivable, or, whether the provision is jurisdictional and thus not subject to enlargement for any reason. If the Court decides that § 546(a) sets forth a statute of limitations, then a second issue to be resolved is whether such statute was tolled under the Tolling Agreement entered into by the parties.

## A. The Nature of 11 U.S.C. § 546(a)

■ Whether § 546(a) is a true statute of limitations that can be extended by agreement of the parties or whether it is a grant of jurisdiction that requires the Court to adhere strictly to a specific time constraint before it can hear a matter is a question of first impression in this Circuit. Although the effect of the provision has been infrequently addressed in other jurisdictions, a split of authority has emerged among those courts that have addressed the issue.

The clear weight of recent authority bolsters the conclusion that § 546(a) is a true statute of limitations that can be extended by the parties, waived, or equitably tolled. *See, e.g., Pugh v. Brook (In re Pugh)*, 158 F.3d 530, 538 (11th Cir.1998) (concluding that the limitations periods set forth in sections 546(a) and 549(d) are statutes of limitations that can be waived); *McFarland v. Leyh (In re Texas Gen. Petroleum Corp.)*, 52 F.3d 1330, 1337–38 (5th Cir. 1995) (holding that § 546(a) is a statute of limitations that can be waived if not asserted in the answer of an adversary proceeding); *Pryor v. Rodriguez (In re Rodriguez)*, 283 B.R. 112, 120 (Bankr.E.D.N.Y.

trine of laches, and is jurisdictionally time-barred.

(5) The complaint fails to comply with the *Initial Case Management Order for Preference Adversaries* dated March 11, 2002.

(6) The complaint fails to state a claim upon which relief can be granted because the Court has no jurisdiction over the action.
*See* July 18, 2003 Answer at 6–7. Only the fourth affirmative defense is at issue in this matter, and this Opinion is so limited to same.

2001) (finding that "section 546(a) is a statute of limitations which can be extended by agreement between the parties"); *Iron–Oak Supply Corp. v. Nibco, Inc. (In re Iron–Oak Supply Corp.)*, 162 B.R. 301, 307 (Bankr.E.D.Cal.1993) (finding that § 546(a) is not a statute of repose); *Amazing Enters. v. Jobin (In re M & L Bus. Machines, Inc.)*, 153 B.R. 308, 311 (D.Colo. 1993) (observing that "the limitations period established in § 546 is not jurisdictional, can be waived, and is subject to the doctrines of equitable estoppel and equitable tolling" (citations omitted)); *Brandt v. Gelardi (In re Shape, Inc.)*, 138 B.R. 334, 337 (Bankr.D.Me.1992) (concluding that § 546(a) is a true statute of limitations that can be extended by agreement of the parties).

The Eleventh Circuit weighed in emphatically on this side of the issue in *In re Pugh*, 158 F.3d 530 (11th Cir.1998).[4] After conducting a comprehensive analysis of the issue-examining case law on both sides, exploring the legislative history of the provision, and scrutinizing the statutory scheme-the *Pugh* court announced that the effect of § 546(a) was not to strip the bankruptcy court of subject matter jurisdiction. *Id.* at 533. Instead, the court concluded that § 546(a) (as well as § 549(d)) is a true statute of limitations that can be waived. *Id.* at 538. This Court agrees and will follow this strand of the extant case law.

Few courts have embraced the jurisdictional approach, and those that have offered scant analysis to justify their position. *See, e.g., Starzynski v. Sequoia Forest Indus.*, 72 F.3d 816, 822 (10th Cir.

1995) (observing the split in authority and suggesting that § 546(a) may be jurisdictional and thus not waivable by the parties); *Martin v. First Nat'l Bank of Louisville (In re Butcher)*, 829 F.2d 596 (6th Cir.1987), *cert. denied*, 484 U.S. 1078, 108 S.Ct. 1058, 98 L.Ed.2d 1020 (1988); *DiCello v. United States (In re Ry. Reorganization Estate, Inc.)*, 133 B.R. 578, 581 (Bankr.D.Del.1991) (citing *Butcher*); *Frascatore v. Sec. of HUD (In re Frascatore)*, 98 B.R. 710, 718 (Bankr.E.D.Pa. 1989) (noting that § 546(a) is a statute of repose and thus prohibits the filing of an action after the limitations period has run).

The case most often cited in support of the jurisdictional view is *In re Butcher*, 829 F.2d 596 (6th Cir.1987). In *Butcher*, the trustee, appointed on August 17, 1983, initiated an avoidance action on August 19, 1985 pursuant to 11 U.S.C. § 547(b). *Id.* at 597. The defendant filed a motion to dismiss, contending that the action was time-barred under § 546(a). *Id.* The trustee countered that the action was commenced in a timely manner because August 17 and 18 (a Saturday and a Sunday) had to be excluded in computing the limitations period under § 546(a) according to Bankruptcy Rule 9006(a) (an adaptation of Federal Rule of Civil Procedure 6(a)). *Martin v. First Nat'l Bank of Louisville (In re Butcher)*, 57 B.R. 101, 101–02 (Bankr.E.D.Tenn.1985), *rev'd*, 78 B.R. 520 (E.D.Tenn.1986), *aff'd*, 829 F.2d 596 (6th Cir.1987). The bankruptcy court found that the trustee's suit was timely commenced, noting that "the time limitation embodied in § 546(a) is more in the nature

---

4. The *Pugh* court analyzed two Code sections– 546(a) and 549(d). The language in the two provisions is virtually the same. The only difference is the event that triggers the start of the time period. *See In re Shape*, 138 B.R. at 337 (comparing the two sections). Section 549(d) provides that a proceeding must be

initiated before the earlier of two years after the date of the transfer sought to be avoided or the time the case is closed or dismissed. 11 U.S.C. § 549(d). Thus, Inland's argument that the Trustee's reliance on *Pugh* is misplaced because the decision's holding centers on § 549 is both in error and without merit.

of a procedural bar to the exercise of a remedy than a condition of time forming a substantive part of the statutory rights in question." *Id.* at 103–04 and n. 2. The district court reversed. 78 B.R. 520 (E.D.Tenn.1986). In affirming the district court's decision, the Sixth Circuit held that "[i]f a complaint seeking to avoid a preferential or fraudulent transfer is not filed in accordance with section 546(a), a bankruptcy court has no jurisdiction to hear the action." 829 F.2d at 600.

The *Pugh* court closely scrutinized the *Butcher* decision and ultimately concluded that it is not persuasive support for the jurisdiction view. *Pugh*, 158 F.3d at 535. This Court agrees. Specifically, *Pugh* found that the *Butcher* court's reliance on an earlier decision, *Rust v. Quality Car Corral, Inc.*, 614 F.2d 1118 (6th Cir.1980), was misplaced because *Rust* was based on the proposition that a limitations period found within the same statute that creates a cause of action must be considered a "substantive" curtailment of the subject matter jurisdiction granted by that statute. *Pugh*, 158 F.3d at 535; *see also Rodriguez*, 283 B.R. at 118 (detailing and assessing the *Pugh* court's discussion of *Butcher*). "The Supreme Court rightly has rejected this categorical approach." *Pugh*, 158 F.3d at 535–36, *citing American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 556–60 and n. 26, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) (other citations omitted). Further, the *Pugh* court observed that the Eleventh Circuit has rejected the ruling in *Rust*, concluding instead that the Truth in Lending Act limitations period that was considered in *Rust* is a statute of limitations. *Id.* at 536 (citations omitted). Finally, *Pugh* noted that both the *Rust* and *Butcher* holdings have been overruled by the Sixth Circuit itself. *Id.* at 536 n. 9. *See Bartlik v. United States Dep't of Labor*, 62 F.3d 163, 166 (6th Cir.1995) (en banc) (reversing the *Rust* and *Butcher* holdings). The

Court concludes that the *Pugh* case espouses the better reasoned view, which this Court will follow.

In addition to the weight of authority finding that § 546(a) is a statute of limitations and the lack of persuasive analysis in support of the jurisdiction position, the plain language of the provision, the statutory arrangement, and the legislative history all strengthen the conclusion that § 546(a) is a true statute of limitations that can be waived.

■ The very purpose of a statute of limitation is to prevent overly stale claims and to provide defendants with certainty that after a set period of time, they will not be have to come to court to defend time-barred claims. *McCuskey v. Cent. Trailer Servs., Ltd.*, 37 F.3d 1329, 1332 (8th Cir.1994); *Grabscheid v. Denbo Iron & Metal Co., Inc. (In re Luria Steel & Trading Corp.)*, 189 B.R. 418, 424 (N.D.Ill. 1995); *Hovis v. United Screen Printers, Inc. (In re Elkay Indus., Inc.)*, 167 B.R. 404, 408 (D.S.C.1994). In addition, limitations periods discourage plaintiffs from sitting on their rights. *Luria Steel*, 189 B.R. at 424; *Elkay Indus.*, 167 B.R. at 408–09. The plain language of the provision responds directly to the purposes above. That is, § 546(a) provides that "[a]n action or proceeding . . . may not be commenced" after a specific time. 11 U.S.C. § 546(a). This language is typical of provisions constituting statutes of limitations. *See Pugh*, 158 F.3d at 534; *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 416, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998) ("The terms of a typical statute of limitation provide that a cause of action may or must be brought within a certain period of time."). The provision does not speak in jurisdictional terms or refer in any way to the jurisdiction of the bankruptcy courts. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S.

385, 394, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).

■ Further, the statutory arrangement lends support to the conclusion that § 546(a) is a statute of limitations. If the provision indicating the time period within which an action must be brought is completely separate from the provision granting jurisdiction to a court, this arrangement substantiates the conclusion that the limitations period at issue is a true statute of limitations. *See Zipes,* 455 U.S. at 394, 102 S.Ct. 1127; *Pugh,* 158 F.3d at 538. In this case, the Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b), and § 157(b)(2)(F) makes it a core proceeding. These provisions are wholly separate from 11 U.S.C. § 546(a).

■ Finally, the legislative history of § 546(a) sheds considerable light on the proper characterization of the provision. Indeed, an examination of the legislative history is fitting, since "[m]ost statutes of limitations are quirky policy determinations made by legislative bodies." *Iron–Oak Supply Corp. v. Nibco, Inc. (In re Iron–Oak Supply Corp.),* 162 B.R. 301, 306 (Bankr.E.D.Cal.1993). *See also Chase Sec. Corp. v. Donaldson,* 325 U.S. 304, 314, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945) (noting that statutes of limitations "have come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate."). Further, the United States Supreme Court has repeatedly pointed to the significant role that legislative intent plays in deciding whether a limitations period can be tolled or waived. *Pugh,* 158 F.3d at 537, *citing American Pipe & Const. Co.,* 414 U.S. at 557–58, 94 S.Ct. 756 (other citations omitted).

Before the enactment of § 546(a), there was no separate and distinct statute of limitations for the trustee's avoiding powers; instead, § 11(e) of the Bankruptcy Act, former 11 U.S.C. § 29(e) (repealed), provided a general two-year statute of limitations for actions brought by the trustee or receiver. *Elkay Indus.,* 167 B.R. at 408 (citation omitted). Indeed, a Senate Report confirms that § 546(a) was enacted as a statute of limitations: "Subsection (c) [enacted as (a)] adds a statute of limitations to the use by the trustee of the avoiding powers." S.Rep. No. 95–989, at 87 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5873. After passage of the 1994 Bankruptcy Reform Act by Congress, but prior to the Act being signed into law, Congressman Jack Brooks of Texas, a major sponsor of the House bill, made the following statement with respect to Section 216: Limitation of avoiding powers, in an attempt to clarify the provision that would become § 546(a):

> This section defines the applicable statute of limitation period under section 546(a)(1) of the Bankruptcy Code as being two years from the entry of an order of relief or one year after the appointment of the first trustee if such appointment occurs before the expiration of the original two-year period. Adoption of this change is not intended to create any negative inference or implication regarding the status of current law or interpretations of section 546(a)(1).
>
> > The section is not intended to have any bearing on the equitable tolling doctrine where there has been fraud determined to have occurred. Further, the time limits are not intended to be jurisdictional and can be extended by stipulation between the necessary parties to the action or proceeding.

140 CONG. REC. E2204–01 (daily ed. Oct. 7, 1994) (statement of Jack Brooks).

The legislative history, thus, is further evidence that Congress intended to enact § 546(a) as a limitations period which, like a typical statute of limitations, can be waived. If Inland's interpretation of the statute as jurisdictional were accepted as true, the time limits would not be subject to enlargement. Such an interpretation would render meaningless the clear instruction that "the time limits are not intended to be jurisdictional and can be extended by stipulation."

Based on the plain language of the Bankruptcy Code provision, the statutory scheme, the legislative history, and the decisions of other jurisdictions, the Court finds that § 546(a) is a true statute of limitations that can be waived or tolled by the parties. The final issue to be decided, then, is whether the statute was tolled under the Tolling Agreement, and the subsequent Amendment, executed by the parties.

### B. *The Tolling Agreement*

■ The Trustee contends that the parties in this case, in an effort to expedite settlement negotiations, intended to toll the running of the statute of limitations on the avoidance action by entering into a Tolling Agreement on November 21, 2002. *See* Alwin Declaration at ¶ 7. An Amendment to the Tolling Agreement, executed on March 26, 2003, extended the tolling period through June 3, 2003. *Id.* at ¶ 8. Inland argues that the Tolling Agreement, by its very terms, cannot be considered by the Court or admitted into evidence for any purpose. At the heart of this issue, then, is the proper interpretation of the Tolling Agreement.

■ The initial focal point of any contract analysis is the language in the contract itself. *Church v. General Motors Corp.*, 74 F.3d 795, 799 (7th Cir.1996). If the language of a contract can be inter-

preted in only one way, the case is over. *AM Int'l, Inc. v. Graphic Mgmt. Assocs., Inc.*, 44 F.3d 572, 574 (7th Cir.1995). However, contract clarity is a function of "the correspondence between the contract and the things or activities that it regulates, and not just of the semantic surface." *Id.* at 575. In interpreting all contracts, the overriding concern is to give effect to the intent of the parties. *Church*, 74 F.3d at 799 (citation omitted).

■ Although written contracts are ordinarily enforced according to the ordinary meaning of the language used in them, a literal interpretation may be disregarded when such a reading would produce absurd results. *Beanstalk Group, Inc. v. AM Gen. Corp.*, 283 F.3d 856, 859–60 (7th Cir. 2002) (citations omitted); *Level 3 Communications, Inc. v. Federal Ins. Co.*, 168 F.3d 956, 958 (7th Cir.1999) (citations omitted) ("[W]hen the application of a rule leads to a truly whacky result, a more than suspicion arises that the parties can't have set *so* high a value on clarity that they would have thought such an application a proper interpretation of the rule. This is true whether the rule is statutory or contractual."). Further, a contract must be construed as a whole; that is, sentences must not be read in isolation, as each takes meaning from others in the same document. *Beanstalk Group*, 283 F.3d at 860 (citations omitted). "A blinkered literalism, a closing of one's eyes to the obvious, can produce nonsensical results." *Id.*

Turning to language of the Tolling Agreement in the case at bar, numbered Paragraph 3, on which Inland relies, notes that:

Nothing herein shall be deemed as any admission of wrongdoing, liability or culpability of any kind. This Tolling Agreement shall not be offered, received or introduced as evidence or used for

any purpose whatsoever in any action or proceeding which may ensue in the event that the matter cannot be amicably resolved, nor shall this Agreement toll any statute of limitations which may have run before December 1, 2002.

Based on this plain language, Inland suggests that the Agreement cannot be used as evidence before this Court to prove that the parties entered into an agreement to toll the applicable statute of limitations.

Interpreting Paragraph 3 of the Tolling Agreement literally, as Inland urges the Court to do, would produce truly absurd results. Indeed, if the parties agreed to toll the statute of limitations but neither party could rely on the contract as evidence of the agreement, the outcome sought by Inland would be patently non-sensical. Further, as the Trustee points out, Inland too violates the "plain meaning" of the Agreement in using the contract in defense of its own motion for summary judgment.

In addition, the Agreement, read as a whole, reflects both parties' intent to toll the statute of limitations in an effort to settle their dispute. Paragraph 1, for example, notes that "[a]ll applicable statutes of limitations and other time-based defenses" are tolled under the Agreement. Paragraph 2 explicitly indicates that "[t]he Parties agree that the time elapsed between December 1, 2002 and the termination of th[e] Tolling Agreement ... shall be excluded from any computation of time." Finally, the first sentence of Paragraph 3, read in conjunction with the other sentences in the paragraph, suggests that the Tolling Agreement cannot be offered, received, or introduced as evidence in connection with "any admission of wrongdoing, liability or culpability"—*not* in connection with the applicable statute of limitations.

Interpreting the Tolling Agreement as a whole and in such a way as to avoid an absurd result, the Court finds that the parties intended to toll the statute of limitations and that the Agreement itself may be offered as evidence of that arrangement. Accordingly, the Court concludes that the statute of limitations was tolled pursuant to the amended Agreement and that the adversary proceeding is thus not time barred by 11 U.S.C. § 546(a).

## V. *CONCLUSION*

For the foregoing reasons, the Court denies Inland's motion for summary judgment and grants the Trustee's cross-motion for summary judgment. Inland's fourth affirmative defense is hereby dismissed. Concurrently entered herewith is the Court's Preliminary Pretrial Order which sets this adversary proceeding for pretrial conference on December 2, 2003 at 8:30 a.m.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

## *ORDER*

For the reasons set forth in a Memorandum Opinion dated the 11th day of September 2003, the Court denies the motion of Inland Plywood Company for partial summary judgment. The Court grants the cross-motion of Alex D. Moglia for summary judgment. Concurrently entered herewith is the Court's Preliminary Pretrial Order setting this adversary proceeding for a pretrial conference on December 2, 2003 at 8:30 a.m.